[Civ. No. 4961. First Appellate District, Division Two.—December 20, 1924.]

## ANNA B. WALTON, Appellant, v. MILDRED T. DONOHUE, Respondent.

[1] NEGLIGENCE—AUTOMOBILE COLLISION—EMPLOYER AND EMPLOYEE—INDEPENDENT CONTRACTOR — COMPENSATION — EVIDENCE. — In this action for damages for the death of a minor child of plaintiff as the result of a collision between an automobile truck in which such child was riding and an automobile that was towing defendant's car, while there was some conflict in the evidence as to whether the driver of the automobile that was towing defendant's car was acting gratuitously, or for an agreed compensation, or for such compensation as the law would award him, there was not a word in the testimony showing or tending to show that he was acting as an employee of defendant, but, on the other hand, it was clear that he was acting as an independent contractor, and it was immaterial whether he was doing so gratuitously or for compensation.

[2] ID. — BURDEN OF PROOF—EVIDENCE—NONSUIT.—The complaint in such action having charged that the driver of the automobile that was towing defendant's car was an employee of defendant, and that defendant was responsible for his conduct, the burden was upon plaintiff to prove such relationship; and when plaintiff failed to introduce proof on that subject it was clearly correct for the trial court to grant defendant's motion for a nonsuit.

(1) 28 *Cyc.*, p. 47, n. 20.   (2) 28 *Cyc.*, p. 46, n. 7; 38 *Cyc.*, p. 1555, n. 8.

APPEAL from an order of the Superior Court of Alameda County granting a motion for a nonsuit. J. J. Trabucco, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Strother P. Walton for Appellant.

Myron Harris and John Jewett Earle for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendant to recover damages for personal in-

1. Liability for injury incident to towing automobile, note, 30 A. L. R. 750.

juries which caused the death of the minor child of the plaintiff. She framed her complaint in three counts. At the end of the plaintiff's case the trial court granted a nonsuit as to the second cause of action and the plaintiff has appealed from that order.

On the 19th of June, 1922, Arthur M. Guenin, as the agent of John Jeel, was driving a truck from Hayward toward Fresno on the state highway in the neighborhood of Livermore. Morgan Walton, a young boy, was a guest riding on the truck with him. Guenin was sitting on the left-hand side of the seat at the steering wheel. Walton was seated on the seat on the right-hand side. At about 7:30 in the evening at a point three or four miles east of Livermore they were traveling on a pavement in the middle of the roadway. The pavement was fifteen or sixteen feet wide. At that point they had been putting patches in the pavement and had erected barricades to protect the patches until they became dry. The barricades were three and one-half to four feet high. They were painted white. The barricades extended probably an eighth of a mile along the highway. They reached out into the highway probably about four feet. As Guenin was passing this territory he could see two cars approaching which he afterward learned were the Overland and Stutz hereinafter mentioned. As near as he could tell the two cars were in about the center of the road. They were south of the barricade. Guenin testified: "I saw those cars coming and of course I expected them to turn in and I kept going east. When I saw they did not, I kept turning out of the road more and more until my inside wheels were two feet on the pavement. I thought there was plenty of room to go by because I am a pretty good judge of distance that way. I saw the car in front hit by the rear car and it hit his car at an angle right across and in front of my left wheel on the left-hand side. It came at an angle across the pavement. My outside wheel being over the side of the bank it threw the steering wheel out of my hand and the truck upset and rolled half over right there." The witness further testified how, as a result of the accident, Morgan Walton lost his life.

The Stutz car, mentioned by Guenin, was occupied by Mrs. Mildred T. Donohue, who had driven from a point in the neighborhood of Modesto toward Oakland until she reached a point near Altamont on the state highway. At that point

her automobile developed troubles and would not work. Mrs. Pratt, her sister, was with her in the automobile. Mrs. Pratt stopped a passerby and asked that assistance be sent to them. In reply a Mr. Johnstone came over to the machine and asked what the trouble was. Mrs. Donohue told him. She testified: "He asked me to try and start the car which I did. It would not go. The engine would go but as soon as I put on the clutch, lifted the clutch out, it would stop. So he got into his machine and backed it towards my car and took a tow rope and tied our car, that is fastened our car to his. He never offered to tow us. I never spoke to him at all about it. We went some little distance very slowly. I don't think we were going over eight or ten miles when the collision occurred. I did not see the collision." She further testified that she was driving a Stutz machine and that the machine belonged to her and that Mrs. Pratt was her guest. "There was no conversation about how much it would cost to get me towed. He said in going that at the garage they would charge me around twenty dollars for a tow. I said it could not be helped. I did not say, as a matter of fact, it was all right; I did not say that. . . . At the coroner's inquest I did not say that I was fortunate to have the tow. He backed up to a point in front of my machine and connected the rope onto the end of my machine. The rope was about fifteen or eighteen feet. The distance separating the two machines was about fifteen feet. Mr. Johnstone started to tow me; I did not object to his towing me. I did not get a chance and I would not have known what to do in any event, night was coming on. He did not tow my car away from there against my will. At any rate, he backed up and attached his car to mine and I did not object. I took the wheel of my car. My car was all right with respect to everything except the clutch, we found out afterwards the master gear was broken. The wheels were all right; the steering was all right; the brakes were all right. It is correct that there was nothing the matter excepting the motor power. The application of the motor power was weak. Mr. Johnstone and I started down east toward Oakland. After we went a little ways we came toward the portion of the road on the north-hand side which had barricades. Mr. Johnstone and I took and crossed to the south and to the left-hand side of those barricades. He was guiding his car and I was guiding mine. That course took us so that my car

was just about the center of the highway, I imagine. It is a fact that the cars had to go on the wrong or left-hand side to pass the barricades—mine and Mr. Johnstone's. I did not see the truck coming up until the collision because our car was a 1917 model and low. We were right behind the smaller car. My eyes were on the rope. I was looking ahead low. We went along in that position while on the left-hand side of the highway, I was watching the tow. I was looking ahead at the tow rope but I was not looking ahead of the truck coming, I could not see that and watch the tow rope. I was not looking further than the tow rope—I could not very well. I was guiding my car on the left-hand side of the highway.'' On cross-examination the witness stated: ''My machine, the Stutz, did not run into the Overland automobile at any time. The Overland car was pushed back against our car. It was pushed back by the truck. It was shoved back against my car. We were to the right of the Overland.''

W. W. Whitton, the shorthand reporter who reported the proceedings at the coroner's inquest, was called as a witness, produced his notes and testified that at the coroner's inquest the defendant testified: ''I remember on the evening of June 19th, of witnessing an accident in which accident an automobile and a truck collided. I was driving the machine·that was being towed. Mr. Johnstone was driving the other machine—was towing it. As we came out to Altamont my machine stopped. The clutch seemed to be grasping and I turned off and stopped right opposite the garage there. The garage was closed. I went across the street and asked, and the man said they had no phone. So this car came along. We stopped them and asked them if they would please send back a man from the garage. He asked what was the matter with the machine. I told him I did not know but it wouldn't go, the clutch kept grabbing. He asked me to start the engine and he would see. So we started the engine and the machine wouldn't go, so the gentleman stepped in—his wife was driving at the time, and he had her take the other seat. He took the wheel and backed up to our machine and got his tow rope and started to tow us. He told me I was fortunate to have a tow because it would cost me twenty dollars, and I said that was all right and we started out; and there was this barricade along the side of the road, just along the edge of the highway where the lanterns were, and we went quite

a distance and when we were being towed we were going very slowly because he was still in second.''

Before proceeding further it should be stated that in the first count of the plaintiff's complaint the plaintiff charged that the defendant ''was in charge of and was driving a motor vehicle which said motor vehicle was being towed by a motor vehicle driven by one Johnstone; that defendant did, carelessly and negligently, drive and operate the motor vehicle which she was then so operating, and that as a result of her wrongful act and negligence in so operating said motor vehicle, she did then and there cause the same to collide with the motor vehicle being operated by Johnstone and did cause said motor vehicle operated by said Johnstone to collide with and overturn the motor vehicle in which said Morgan Walton was a passenger; . . . '' The second count charged, ''That said Johnstone was employed by defendant for towing of her said motor vehicle and she was responsible for his conduct; that at said time and place said Johnstone did carelessly and negligently drive and operate the motor vehicle which he was driving and with which he was towing defendant's motor vehicle and, as a result of said careless and negligent driving and operating of said automobile said Johnstone did cause the same to collide with and overturn the motor vehicle in which said Morgan Walton was a passenger; . . . '' In the third count the plaintiff alleged, '' . . . that at said time and place defendant was in charge of and was driving a motor vehicle and one Johnstone was in charge of and was driving a motor vehicle; that defendant did carelessly and negligently operate the motor vehicle which she was driving and Johnstone did carelessly and °negligently operate the motor vehicle which he was driving; that the negligence of defendant and Johnstone did concur and said negligence so concurring did cause the automobile driven by defendant to strike the automobile driven by Johnstone with the result then and there that the automobile driven by Johnstone did collide with and overturn the motor vehicle in which said Morgan Walton was a passenger; . . . '' By a comparison of these three counts it is patent that the effect on the plaintiff's rights of the order appealed from was to take from the jury a consideration of the question as to whether under the evidence introduced Johnstone was an employee of Mrs. Donohue. Both counsel have briefed the case on that theory. [1] Looking back over the

evidence introduced by the plaintiff it is clear that there was some conflict in the evidence as to whether under the facts Johnstone was acting gratuitously, for an agreed compensation, or for such compensation as the law would award him, but it is equally clear that there is not a word in the testimony showing or tending to show that Johnstone was acting as the employee of Mrs. Donohue. On the other hand, it is quite clear that he was an independent contractor, whether gratuitously or for compensation it is not necessary to determine. In *Barton* v. *Studebaker Corp. of America,* 46 Cal. App. 707, 715 [189 Pac. 1025], the court said: ''The real test as to whether a person is an independent contractor or a servant is whether the person alleged to be the master, under his arrangement with the other party, has or has not any authoritative control of the latter with respect to the manner in which the details of the work are to be performed, and, therefore, this test or element 'must, in the last analysis, always determine what was the essential nature of the relationship between the person who performed the given work and the person for whom it was performed.' (Labatt on Master & Servant, sec. 18, p. 56.)'' The rule has been stated so many times that we do not deem it necessary to attempt to cite the numerous cases. The difficulty in every case is to ascertain whether the evidence shows or does not show the elements of the rule. In this case it will be seen at a glance that the respondent did not attempt to state any direction or directions to Johnstone and that Johnstone did not consult her nor ask for any direction or directions, or consent to be governed by any if they were given. **[2]** The burden of showing the relationship existing between the respondent and Johnstone rested on the appellant. Having failed to introduce the proof on that subject it was clearly correct for the trial court to grant the motion for a nonsuit on the second count. (Code Civ. Proc., sec. 581, subd. 5.)

The order granting the motion is affirmed.

Langdon, P. J., and Nourse, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 16, 1925.

All the Justices concurred.